Brian H. Kim  (State Bar Cal. No. 215492)
BOLT KEENLEY KIM LLP
2855 Telegraph Ave., Suite 517
Berkeley, California 94710
Phone: (510) 225-0696
Fax: (510) 225-1095

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLEN WILLIAMS, | Case No.: 3:21-cv-1073 |
| Plaintiff, | ***COMPLAINT (ERISA)*** |
| v. | |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | |
| Defendant. | |

## INTRODUCTION

1. This case challenges Defendant Unum Life Insurance Company of America's ("Unum"), wrongful termination of long-term disability ("LTD") benefits to the Plaintiff Ellen Williams under the Ernest Gallo Clinic & Research Center Long Term Disability Plan (the "Plan").

## JURISDICTION

Case No.: 3:21-cv-1073                           1                           COMPLAINT (ERISA)

2. Plaintiff brings this action for declaratory, injunctive, and monetary relief pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 28 U.S.C. § 1331.

**VENUE**

3. Venue lies in the Northern District of California pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because all Defendants can be found in this Judicial District, and the ERISA-governed plan at issue was administered in part in this District.

**INTRADISTRICT ASSIGNMENT**

4. This case should be assigned to the San Francisco/Oakland court because the Plan was administered in part within this division.

**PARTIES**

5. At all relevant times, Plaintiff was a beneficiary as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan.

6. At all relevant times, the Plan was an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), sponsored by Ernest Gallo Clinic & Research Center, whose headquarters are located at 5858 Horton Street, Suite 200 Emeryville, California 94608. Unum was and remains the de facto co-plan administrator and co-claims fiduciary of the Plan.

7. At all relevant times, Plaintiff was employed by Gallo and as such was enrolled in the Plan, to wit: a group insurance contract issued by Unum, Policy Number 550605 (the "Policy"). As the payor of benefits and the claims administrator of the Plan, Unum operates under a structural conflict of interest as defined by *Abatie v. Alta Health and Life Ins. Co.*, 458 F.3d 466 (9th Cir. 2006)(en banc) and *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).

**FACTS COMMON TO ALL COUNTS**

8. The Policy provided for LTD benefits if a claimant is "disabled" defined for the first 24 months of benefits as "limited from performing the material and substantial duties of

your regular occupation." After 24 months of payments, "disability" is defined as the inability to perform "the duties of any gainful occupation for which you are reasonably fitted by education, training or experience." Gainful occupation is defined in the Policy as an" occupation that is or can be expected to provide you with an income at least equal to your gross disability payment within 12 months of your return to work."

9. On September 13, 2006, Plaintiff became disabled due to her disabling medical conditions, which included but were not limited to thoracic outlet syndrome, carpal tunnel syndrome, and she applied for LTD benefits under the Policy. Unum approved her claim for LTD benefits, and Plaintiff began receiving a gross LTD benefit of $5,000 per month based on her predisability earnings of $9,416.67. Plaintiff has and continues to be disabled under the "regular occupation" and "gainful occupation" provision of the Policy due to her disabling conditions.

10. Starting in 2015, Plaintiff consistently disclosed to Unum that she was attending a seminary school to obtain a Master's in Divinity Studies (which she obtained in May 2017) in order to retrain to become a Pastor. In December 2017, Plaintiff disclosed to Unum that she had accepted a position as a Pastor for St. John's Lutheran Church in Texas and had started working in December 3, 2017.

11. Plaintiff consistently provided proof of her income to Unum. Her first paycheck dated December 21, 2017 showed her salary of $3,416.67 per month, plus a housing (parsonage) allowance of $2,000 a month. Plaintiff also provided her 2017 taxes to Unum, which also explicitly disclosed the housing allowance, as non-taxable and not deemed wages or earnings under the federal tax code. After reviewing these disclosures, Unum's internal notes repeatedly confirmed that Plaintiff's disability earnings were only $3,416.67 per month, and therefore she met the "gainful occupation" provision of the Policy and that there would be no offset to her gross LTD benefit.

12. Following that determination, Unum repeatedly made representations to Plaintiff verbally and in writing that her earnings as a Pastor did not disqualify her to from ongoing LTD benefits under the Policy, that her gross LTD benefit would not be reduced as a result of her

earnings as a Pastor. It also repeatedly failed to disclose to Plaintiff that the housing allowance she received and disclosed to Unum would not be deemed as disability earnings under the Policy. In its July 6, 2018 letter to Plaintiff, Unum represented to Ms. Williams that for the first 12 months of her return to work, she would be eligible for the "Work Incentive Benefit" under which her gross LTD benefit would not be reduced so long as her gross LTD benefit plus her "earnings while disabled" did not exceed 100% of her pre-disability earnings. Moreover, Unum represented through this July 6, 2018 letter that following 12 months of working, benefits would be payable in proportion to the income loss she experienced, comparing her predisability earnings to the income she earned during her return to work as a Pastor. The letter made no mention of her housing allowance as being included as disability earnings.

13. The Policy provides that "During the first 12 months of payments, while working, your monthly payment will not be reduced as long as disability earnings plus the gross disability payment does not exceed 100% of indexed monthly earnings." It also provides that "[a]fter 12 months of payments, while working, you will receive payments based on the percentage of income you are losing due to your disability."

14. Unum's July 6, 2018 letter made no mention of provisions in its Policy stating that "[d]uring the first 24 months of disability payments, if your monthly disability earnings exceed 80% of your indexed monthly earnings, Unum will stop sending you payments and your claim will end." Nor did the July 6, 2018 letter mention the provision of the Policy stating that "[b]eyond 24 months of disability payments, if your monthly disability earnings exceed the gross disability payment, Unum will stop sending you payments and your claim will end." The July 6, 2018 letter similarly made no mention of the definition of "disability earnings" which is defined under the Policy as "the earnings which you receive while you are disabled and working." The "disability earnings" provision of the Policy is ambiguous and as a result must be construed against its drafter Unum in favor of Plaintiff. *Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620, 625 (9th Cir. 2007). Similarly, the Policy does not define what constitutes "the first 24 months of disability payments" and said term is ambiguous (as it fails to specify whether this term refers to the first 24 months of disability payments during which a claimant is working

or the first 24 months of disability payments regardless of whether a claimant is working or not) and must therefore be construed against its drafter Unum in favor of Plaintiff.  *Id.*

15.     Plaintiff reasonably relied on Unum's material representations and nondisclosures that 1) her monthly disability earnings were $3,146.67; 2) that her housing allowance would not be deemed disability earnings by Unum; and 3) that her gross benefit would not be reduced at all for the first 12 months of her employment as a Pastor, so long as her wages of $3,146.67 plus her gross LTD benefit of $5,000 was less than her predisability earnings.  Had Unum disclosed that it would count her non-taxable housing allowance as a "disability earnings" and had she been informed that such an allowance would have put her over the "gainful occupation" threshold of disability, Plaintiff would have restructured her salary and/or adjusted the housing allowance so as not to reach the $5,000 threshold asserted by Unum.

16.     Unum continued its misrepresentations and nondisclosures, and Plaintiff continued to reasonably rely on such misrepresentations and nondisclosures for 16 months until April 1, 2019, when Unum demanded that Plaintiff reimburse Unum $68,557.42, because Unum "failed to notice that you have a $2,000 monthly housing allowance that is considered earnings," despite the fact that Plaintiff had consistently provided paystub and tax return information that fully disclosed her housing allowance from December 2017 onward.  Unum then sent a letter to Plaintiff on April 11, 2019 terminating her claim as of March 20, 2019, claiming that her earnings as of December 21, 2017 were created "than the amount the policy allows."

17.     Plaintiff timely appealed Unum's adverse benefit determination and noted Unum's misrepresentations and nondisclosures that led to Plaintiff's reasonable reliance and the entrapment caused by Unum's improper claims handling.

18.     On January 23, 2020, Unum denied Plaintiff's appeal.

19.     Unum's actions are contrary to the terms of the Plan and California law governing group LTD insurance policies.

20.      In adjudicating Plaintiff's claims, Unum's actions fell well below the "higher-than-marketplace quality standards" imposed by ERISA according to *Metro. Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2350 (2008).

21. As a direct and proximate result of the aforementioned acts and omissions of Unum and the Plan, Plaintiff suffered damages as outlined below.

22. As the result of the actions of Unum, the Plan and each of them, Plaintiff has been improperly denied LTD insurance benefits under the Plan to which she is entitled together with interest thereon.

23. As a further result of the actions of Unum the Plan, and each of them, Plaintiff has been required to engage the services of legal counsel for the purpose of obtaining his life insurance benefits.

### FIRST CLAIM FOR RELIEF
**[Claim for LTD Benefits Pursuant to ERISA § 502(a)(1)(B) Against Unum under the terms of the Plan]**

24. Plaintiff incorporates Paragraphs 1 through 23 as though fully set forth herein.

25. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to her under the terms of a plan, to enforce her rights under the terms of an ERISA plan.

26. At all relevant times, under the terms of the Plan as set forth in the governing plan instruments, Plaintiff became and remains entitled to LTD insurance benefits under the Plan and the Policy.

27. By terminating Plaintiff's claim for LTD insurance benefits, and by related acts and omissions, Unum violated, and continues to violate, the terms of the Plan and Plaintiff's rights thereunder.

28. Unum's refusal to pay Plaintiff benefits violates the terms of the Plan, and Unum's actions in administering Plaintiff's claim and in denying benefits were wrongful and an abuse of discretion.

29. At all material times herein, Unum failed and refused to honor the terms of the Plan, and therefore, owes the full amount of benefits to the Plaintiff.

30. Given that the Policy's effective date is after January 1, 2013, any discretionary authority conferred by the Policy on Unum is null and void under California Insurance Code §

10110.6 and Unum's decision must be decided under a *de novo* standard of review. *See, e.g., Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, Plan No. 625,* 856 F.3d 686, 695 (9th Cir. 2017).

31. As a proximate result of Unum's, Plaintiff has been deprived of her LTD benefits under the Plan, benefits to which she was and is entitled and has suffered damages as set forth above.

**SECOND CLAIM FOR RELIEF**
**[Claim for Equitable Relief Pursuant to ERISA § 502(a)(3) Against Unum]**

32. Plaintiff incorporates paragraphs 1 through 23 as through fully set forth herein.

33. This claim for relief is brought pursuant to 29 U.S.C. § 1132(a)(3) only to the extent that the Court finds that the remedy under the First Claim For Relief is unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B).

34. Plaintiff asserts a claim for breach of fiduciary duty against Unum as an individual participant of the Plan.

35. At all material times herein, Defendant Unum was a fiduciary with respect to their exercise of authority over the management, disposition of assets and administration of the Plan.

36. The primary policy objective of the statute is to protect the rights of plan participants and their promised plan benefits. *Varity Corp. v. Howe*, 516 U.S. 489, 496-97 (1996).

37. The default rule is that the ERISA plan's named fiduciary has unlimited liability for the entire operation and administration the plan. *See* 29 C.F.R. § 2509.75-8, FR-13 & FR-14.

38. The fiduciary must "discharge his duties… for the exclusive purpose of (i) providing benefits to participants and their beneficiaries…in accordance with the documents and instruments governing the plan…consistent with the provisions of [ERISA]. 29 U.S.C. § 1104(a)(1) (A (i), (B).

39. If a named fiduciary designates another person under the terms of the ERISA plan instrument to undertake fiduciary responsibilities, the named fiduciary does not escape fiduciary liability but remains liable as a co-fiduciary.

40. As a fiduciary of the Plan, Unum was obliged to discharge its duties solely in the interests of beneficiaries and participants for the exclusive purposes of providing beneficiaries and participants benefits, defraying reasonable expenses of the Plan, using all prudent skill and diligence in accordance with the documents and instruments governing the Plan. Said duties include, but are not limited to, knowing the material terms of the Plan and accurately informing Plaintiff of the terms of the Plan and the bases for maintaining eligibility and coverage under the Plan.

41. At all material times, Unum violated these duties by failing to fulfill its duties and promises made to Plaintiff as described above regarding coverage for LTD benefits under the Plan.

42. Unum violated its fiduciary duties by, *inter alia*,

    A. Making misrepresentations to Plaintiff that she would continue to be eligible for continued LTD benefits following her repeated disclosure of her status as working as a Pastor with a housing allowance that was not considered taxable earnings by the IRS; and

    B. Consciously and unreasonably and without justification failing to provide accurate and complete disclosure of information to Plaintiff regarding its treatment of the housing allowance as "disability earnings," its interpretation of the "disability earnings" provision of the Policy.

43. Plaintiff was justified in relying on the representations, material nondisclosures and actions of Unum. Plaintiff's reposed trust and confidence in the knowledge, integrity and fidelity of Unum, and Plaintiff relied on the good faith and integrity of Unum. As a result of the Plaintiff's confidence, trust and faith in the knowledge and integrity of Unum. Plaintiff was justified in relying on the representations, material nondisclosures and actions of Unum, and thereby refrained from adjusting her income or adjusting the housing allowance to ensure continued receipt of LTD benefits under the Policy.

44.     Plaintiff is entitled to other equitable relief under Section 502(a)(3) of ERISA against Unum to make her whole for the losses caused by Unum, including but not limited to equitable surcharge (in an amount equal to Plaintiff's loss due to the Unum's representations and/or nondisclosures regarding the conditions to ensure Plaintiff's continued coverage and receipt of LTD benefits under the Plan), plan reformation (by rewriting and/or modifying the Plan in order to ensure Plaintiff's continued coverage under the Plan), equitable estoppel (by estopping Unum from relying on the provisions in the Policy regarding "disability earnings" and the provisions regarding "Work Incentive Benefit" as bases for terminating LTD benefits under the Plan and seeking reimbursement from Plaintiff of previously paid LTD benefits to Plaintiff), or other equitable remedies available under Section 502(a)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant the following relief:

A.  Declare that the Unum violated the terms of the Plan by terminating Plaintiff's claim for LTD benefits;

B.  Order Unum to pay to Plaintiff LTD benefits under the terms of the Plan from March 20, 2019 to maximum period of LTD benefits under the Plan and Policy;

C.  Order equitable relief from Unum as set forth above;

D.  Award Plaintiff attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1);

E.  Award prejudgment interest at the California statutory rate on all benefits owed under the terms of the Plan that have accrued prior to the judgment.

F.  Provide such other relief as the Court deems equitable and just.

Dated:  February 5, 2021

BOLT KEENLEY KIM LLP

By:  /s/ Brian H. Kim
     Brian H. Kim

Attorneys for Plaintiff